**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

RANDY K. JAMES                                                                  **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO.:  3:18CV167-JMV**

**CORRECTIONS CORPORATION OF AMERICA, ET AL.**                **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

On September 25, 2018, Randy K. James, a California inmate housed at the Tallahatchie

County Correctional Facility at the times relevant to this action, appeared before the Court for a

hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to determine whether there

exists a justiciable basis for his claim filed under 42 U.S.C. § 1983.  A plaintiff's claim will be

dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the

violation of a legal interest that does not exist."  *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)

(citations omitted).  The Prison Litigation Reform Act applies to this case because the plaintiff

was incarcerated when he filed this lawsuit.  Plaintiff having consented to U.S. Magistrate Judge

jurisdiction in this case in accordance with 28 U.S.C. § 636(c), the undersigned has the authority

to enter this order and the accompanying judgment.

**I.  Plaintiff's Allegations**

James maintains that on June 7, 2016, he alerted Correctional Officer Sykes that a

malfunctioning wall outlet had ignited toilet paper rolls in his cell, and that the cell was filling

with smoke.  James alleges that Sykes ignored him and his roommate when they asked for help,

and that they thereafter pressed the intercom button and banged on the door multiple times

without getting a response from Sykes.  Eventually, he claims, other inmates smelled the smoke

and began yelling and beating on their cell doors, as well, which prompted officers to come

move the inmates out of their cells and to the shower stalls. James contends that while he was in the shower stall waiting for maintenance to fix the malfunctioning outlet, Sgt. Drain was advised of the entire incident but never filed a report. When the cell had been aired out sufficiently, James claims, he and the other inmates were placed back in their cells. James reports that he did not request or receive any medical treatment relating to the incident.

James also contends that in the morning hours of July 19, 2016, while attempting to hand his breakfast tray through the slot in his cell door, he dropped the tray, allegedly striking Correctional Officer Leflore on the leg. James states that he immediately began to apologize, but that Leflore, thinking that James threw the tray at him, opened the slot and hurled the tray inside, striking James on the foot. James alleges that the lights in his cell had blown out days earlier, and that because he could not see well, he slipped in the food as he bent down to retrieve the tray. James states that he fell to the floor and hit his head. He claims he yelled "Man Down!" before he lost consciousness. James was taken to the medical unit, where a doctor advised him that he had symptoms of a minor concussion and prescribed him Ibuprofen. James states he thereafter complained about his unbearable headaches, but that it took medical professionals approximately three weeks to take him to an outside hospital to receive an evaluation. By that time, he contends, the doctors could not find anything wrong with him.

James next maintains that, as a result of Leflore throwing a tray at him, he began requesting access to an attorney to press charges against Leflore. James maintains that staff largely ignored him, advising him to write the police chief and the mayor. James states that he wrote these officials but continued to request information, such as a list of attorneys he could contact. James claims that he eventually was able to contact his criminal attorney in California, but that the attorney could not help James. Frustrated by the staff's indifference to his requests, James claims, he threw papers and food wrappers outside of his cell to get attention. According

to James, he told the responding officer, Sgt. Drain, that he "trashed" the tier because his right to an attorney was being violated. James alleges that Sgt. Drain cut off all water to his cell for three days in response, and that he was not provided any water by correctional facility staff during that time period.

James also contends that on November 22, 2016, he returned to his cell after advising Chief Little that he was going to write his criminal defense attorney about pressing charges against Correctional Officer Leflore, when he was removed from his cell so that it could be searched upon instructions from Chief Little. He alleges that Sgt. Drain and Lt. Bowie confiscated all of his personal property, alleging that they were taking the items for James' personal safety. James states that the officers only left behind a mattress, his television, and a cable cord. All of his personal property, including his legal papers, clothes, and hygiene items, were kept for six days. Therefore, he claims, he was not able to brush his teeth, shower, change clothes, or correspond on legal matters for six days.

Aggrieved by these incidents, James filed the instant § 1983 suit against Corrections Corporation of America, Tallahatchie County Correctional Facility, Sergeant Drain, Correctional Officer Kevin Leflore, Assistant Warden Grant, Chief K. Little, Captain J. Jenkins, Lieutenant Bowie, Correctional Officer Sykes, and Warden Frink, seeking monetary damages for the alleged violations of his constitutional rights.

## II. Claims to be Dismissed

First, the Court finds that James' allegations concerning the malfunctioning wall outlet and officers' response thereto fails to raise a constitutional claim based on officers' alleged failure to protect or intervene to protect him from harm, as he admitted during his *Spears* hearing that he suffered no injury as a result of the fire that started from the malfunctioning wall outlet. Because no physical injury occurred, James cannot recover any damages against Defendants in

this action.  *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]"); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (affirming dismissal of failure-to-protect claim based on absence of physical injury); *see also Castellano v. Treon*, 79 F. App'x 6, 7 (5th Cir. 2003) ("The district court did not err in dismissing Castellano's complaint as frivolous. Castellano's failure-to-protect claim fails because he concedes that he suffered no actual physical injury resulting from the prison officials' purported failure to protect.").  This claim will be dismissed.

Second, construing James' complaint liberally, the Court considers whether James has stated a claim for excessive force against Correctional Officer Leflore.  In determining whether a prison official's use of force violates the Eighth Amendment, "the core judicial inquiry is. . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (internal citation omitted).  Here, James alleges that Leflore threw a tray at him because he misconstrued James' actions.  The Court can think of no principled reason an officer would need to throw a tray at an inmate under such circumstances.  However, no injury resulted to James when Leflore allegedly threw the tray at him.  Rather, James was purportedly injured because he thereafter slipped in food.  Because the Fifth Circuit has limited recovery in these cases to injuries that "resulted **directly and only from the use of force** that was clearly excessive to the need," James cannot recover damages with regard to the force exerted against him by Leflore.  *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996) (emphasis added); *see also* 42 U.S.C. § 1997e(e).  This claim will be dismissed.

Third, the Court also considers whether the facts as asserted by James state a claim for the delay of medical treatment.  James claims he struck his head and was, for three weeks, denied any pain medication stronger than Ibuprofen.  Where a plaintiff complains of a delay in

medical treatment, he must show deliberate indifference to serious medical needs that resulted in substantial harm in order to prevail. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (citing *Easter v. Powell*, 457 F.3d 459, 464 (5th Cir. 2006)). Here, James received prompt medical treatment after his fall. His disagreement with the medication prescribed fails to state a claim of deliberate indifference. *See, e.g.*, *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Moreover, James stated at his *Spears* hearing that once he was taken to an outside hospital for treatment, the doctors could find nothing wrong with him. Accordingly, he cannot be said to have sustained an injury because of the three-week delay. This claim will be dismissed.

Fourth, the Court notes that James' challenge to the search of his cell and confiscation of his personal belongings implicates the Eighth Amendment, which protects inmates from cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1981). In order for James to state a claim that the deprivation of his personal property violated the Eighth Amendment, he must show that (1) the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and (2) that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. However, not all unpleasant conditions of confinement meet this standard, as restrictive and harsh conditions "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The length of time spent in the offensive condition(s) is relevant, because a "filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." *Alexander v. Tippah Cty.*, 351 F.3d 626, 631 (5th Cir. 2003) (citation omitted). In this instance, James alleges that he was deprived of his hygiene items and a change of clothes for six days. However, James stated at his *Spears* hearing that he received meals in his cell during that time and had water from a sink available to him in his cell. Under these circumstances, the Court finds that the conditions faced by James, while

perhaps unpleasant, do not rise to the level of a constitutional violation. *See, e.g., Hamilton v. Lyons*, 74 F.3d 99, 106-07 (5th Cir. 1996) (finding no constitutional violation where inmate was denied sheets and showers for a three-day period); *Keltner v. Cook*, No. 3:16-CV-179-TAV-HBG, 2017 WL 2468972, at *3 (E.D. Tenn. June 7, 2017) ("Accordingly, Plaintiff's allegations that he was denied a shower, denied clean clothes, and around stopped up toilets for a five-day period, during which time he was exposed to bad smells, fail to state a claim for violation of the Eighth Amendment."); *McClain v. Wilkinson*, No. CIV. A. 07-2190, 2008 WL 1860203, at *6 (W.D. La. Apr. 4, 2008) (finding claims that inmate was denied basic hygiene opportunities — a shower, access to soap and cleaning materials, and clean clothes — for the period of one week fails to rise to level of Eighth Amendment violation). This claim will be dismissed.

Next, the Court considers James' allegations that he was denied temporary access to his legal correspondence and access to an attorney. It is a well-established rule that prisoners have a limited right of access to the courts to challenge a sentence or the conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 346, 354-55 (1996). In order to ensure that this right to protected, "inmates must have a reasonable opportunity to seek and receive the assistance of attorneys." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974).

The Court finds that James cannot sustain a claim that he was denied access to the court by Defendants' confiscation of his legal materials for six days, as he concedes that he did not attempt to present a legal claim during that time, nor did he suffer any dismissed legal deadlines as a result of Defendants' actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (holding plaintiff pursuing access to court claim must show (1) that he suffered an "actual injury" by losing the chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that there is no other available "remedy that may be awarded as recompense" for the lost claim other than the instant suit).

Additionally, the Court finds that James cannot demonstrate that he was denied reasonable access to an attorney, as he has asserted only that Defendants refused to help him find an attorney who would agree to "press charges" against Correctional Officer Leflore. James stated at his *Spears* hearing that he was allowed to contact his criminal defense attorney in California. To the extent that James argues that he could not immediately telephone his attorney upon his request, the Court notes that prisoners have no right to unlimited telephone use upon demand, even to contact their attorney. *See Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982); *Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976). Accordingly, these allegations fail to state a claim.

### III. Claim to Proceed

James has sufficiently alleged that Sgt. Drain subjected him to conditions that amounted to cruel and unusual punishment in turning off the water to his cell for three days. This claim will proceed against Sgt. Drain.

### IV. Conclusion

Process will issue against Sgt. Drain for James' claim that Sgt. Drain cut off water to his cell for three days. All other claims fail to raise a constitutional issue, and therefore, James' remaining claims are **DISMISSED**. Because no claim survives against them, Defendants Corrections Corporation of America, Tallahatchie County Correctional Facility, Correctional Officer Kevin Leflore, Assistant Warden Grant, Chief K. Little, Captain J. Jenkins, Lieutenant Bowie, Correctional Officer Sykes, and Warden Frink are **DISMISSED WITH PREJUDICE** from this action.

**SO ORDERED** this the 26th day of September 2018.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**